UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| STANLEY JACOBS, <br><br> Plaintiff, <br><br> v. <br><br> NORTONLIFELOCK INC., SUSAN P. BARSAMIAN, ERIC K. BRANDT, FRANK E. DANGEARD, NORA M. DENZEL, PETER A. FELD, KENNETH Y. HAO, EMILY HEATH, VINCENT PILETTE, and SHERRESE M. SMITH, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Stanley Jacobs ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against NortonLifeLock Inc. ("NortonLifeLock" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which NortonLifeLock will acquire Avast plc ("Avast") through NortonLifeLock's subsidiary Nitro Bidco Limited ("Bidco") (the "Proposed Transaction").[1]

---

[1] Non-party Avast is a public company incorporated in England and Wales, with its principal executive offices located at Pikrtova 1737/1a, 140 00 Prague 4, Czech Republic. Avast's shares trade on the London Stock Exchange under the ticker symbol "AVST." Non-party Bidco is a private company incorporated in England and Wales and a wholly-owned subsidiary of NortonLifeLock.

2. On August 10, 2021, NortonLifeLock and Avast jointly announced their entry into an Agreement and Plan of Merger dated that day (the "Merger Agreement"). That agreement provides Avast stockholders can elect to receive either: (a) $7.61 in cash and 0.0302 of a share of Company common stock (the "Majority Cash Option"); or (b) $2.37 in cash and 0.1937 of a Company share (the "Majority Stock Option").

3. On October 4, 2021, NortonLifeLock filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that NortonLifeLock stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a

corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of NortonLifeLock.

10. Defendant NortonLifeLock is a Delaware corporation with its principal executive offices located at 60 E. Rio Salado Parkway, Suite 1000, Tempe, Arizona 85281. NortonLifeLock's shares trade on the Nasdaq Global Select Market under the ticker symbol "NLOK."

11. Defendant Susan P. Barsamian ("Barsamian") is and has been a director of the Company since 2019.

12. Defendant Eric K. Brandt ("Brandt") is and has been a director of the Company since 2020.

13. Defendant Frank E. Dangeard ("Dangeard") has been Chairman of the Board since December 2019, and a director of the Company since January 2007.

14. Defendant Nora M. Denzel ("Denzel") is and has been a director of the Company since 2019.

15. Defendant Peter A. Feld ("Feld") is and has been a director of the Company since 2018.

16. Defendant Kenneth Y. Hao ("Hao") is and has been a director of the Company since March 2016.

17. Defendant Emily Heath ("Heath") is and has been a director of the Company since January 2021.

18. Defendant Vincent Pilette ("Pilette") is Chief Executive Officer ("CEO") of the Company, and is and has been a director since 2019.

19. Defendant Sherrese M. Smith ("Smith") is and has been a director of the Company since January 2021.

20. Defendants identified in paragraphs 11-21 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On August 10, 2021, NortonLifeLock and Avast jointly announced in relevant part:

> TEMPE, Ariz. & PRAGUE & LONDON -- NortonLifeLock (NASDAQ: NLOK), a global leader in consumer Cyber Safety, and Avast (LSE: AVST), a global leader in digital security and privacy, are pleased to announce that they have reached agreement on the terms of a recommended merger of Avast with NortonLifeLock, in the form of a recommended offer by NortonLifeLock, for the entire issued and to be issued ordinary share capital of Avast.
>
> Under the terms of the merger Avast shareholders will be entitled to receive a combination of cash consideration and newly issued shares in NortonLifeLock with alternative consideration elections available. Based on NortonLifeLock's closing share price of USD 27.20 on July 13, 2021 (being the last trading day for NortonLifeLock shares before market speculation began in relation to the merger on July 14, 2021, resulting in the commencement of the offer period), the merger values Avast's entire issued and to be issued ordinary share capital between approximately USD 8.1B and USD 8.6B, depending on Avast shareholders' elections.
>
> The boards of NortonLifeLock and Avast believe that the merger has compelling strategic and financial rationale and represents an attractive opportunity to create a new, industry-leading consumer Cyber Safety business, leveraging the established brands, technology and innovation of both groups to deliver substantial benefits to consumers, shareholders, and other stakeholders.
>
> "This transaction is a huge step forward for consumer Cyber Safety and will ultimately enable us to achieve our vision to protect and empower people to live their digital lives safely," said Vincent Pilette, Chief Executive Officer of NortonLifeLock. "With this combination, we can strengthen our Cyber Safety platform and make it available to more than 500 million users. We will also have the ability to further accelerate innovation to transform Cyber Safety."
>
> "At a time when global cyber threats are growing, yet cyber safety penetration remains very low, together with NortonLifeLock, we will be able to accelerate our shared vision of providing holistic cyber protection for consumers around the globe," said

4

Ondřej Vlček, Chief Executive Officer of Avast. "Our talented teams will have better opportunities to innovate and develop enhanced solutions and services, with improved capabilities from access to superior data insights. Through our well-established brands, greater geographic diversification and access to a larger global user base, the combined businesses will be poised to access the significant growth opportunity that exists worldwide."

**Strategic and Financial Benefits**

- Accelerates the transformation of consumer Cyber Safety with over 500 million users;
- Combines Avast's strength in privacy and NortonLifeLock's strength in identity, creating a broad and complementary product portfolio, beyond core security and towards adjacent trust-based solutions;
- Strengthens geographic diversification and facilitates expansion into the SOHO / VSB segments;
- Unlocks significant value creation through approximately USD 280 million of annual gross cost synergies[1], with additional upside potential from new reinvestment capacity for innovation and growth;
- Brings together two strong and highly experienced consumer-focused management teams.

The Merger will also enhance the financial profile of the combined company through increased scale, long-term growth, cost synergies with reinvestment capacity and strong cash flow generation supported by a resilient balance sheet, and is expected to drive double-digit EPS accretion within the first full year following completion of the Merger and double-digit revenue growth in the long-term.

**Organization and Management**

Following the completion of the transaction, NortonLifeLock's CEO, Vincent Pilette, will remain CEO, NortonLifeLock's CFO, Natalie Derse, will remain CFO, and Avast's CEO, Ondřej Vlček, is expected to join NortonLifeLock as President and become a member of the NortonLifeLock Board of Directors. In addition, Pavel Baudiš, a co-founder and current director of Avast, is expected to join the NortonLifeLock Board as an independent director.

On completion of the merger, the combined company will be dual headquartered in Prague, Czech Republic, and Tempe, Arizona, USA, and will have a significant presence in the Czech Republic. The combined company will be listed on NASDAQ.

## The Proxy Statement Contains Material Misstatements or Omissions

22. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to NortonLifeLock' stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or

appraisal decision on the Proposed Transaction.

23. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) NortonLifeLock's and Avast's financial projections; and (b) the valuation analyses underlying the fairness opinion provided Evercore Group L.L.C. ("Evercore"), financial advisor to the Company.

*Material Omissions Concerning the Company's and Avast's Financial Projections*

24. The Proxy Statement omits material information regarding the Company's financial projections, as well as those for Avast, including the line items underlying: (a) Adjusted EBITDA; (b) Adjusted Net Income, and (c) Adjusted Unlevered Free Cash Flow.

25. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in violation of the Exchange Act.

*Material Omissions Concerning the Financial Analyses Relied on by the Board*

26. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Evercore.

27. The Proxy Statement describes the Evercore's fairness opinions and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Evercore's work. As a result, NortonLifeLock stockholders cannot assess what significance to place on the Evercore's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

28. With respect to Evercore's *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed in the analysis.

29. With respect to Evercore's *Discounted Cash Flow Analysis* of Avast, the Proxy Statement fails to disclose: (a) the number of fully diluted shares of Avast; (b) Avast's net debt (calculated as total debt and certain other debt-like items less cash) as of June 30, 2021; and (c) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis.

30. With respect to Evercore's *Discounted Cash Flow Analysis* of NortonLifeLock, the Proxy Statement fails to disclose: (a) the number of fully diluted shares of NortonLifeLock; (b) the Company's net debt (calculated as debt less cash and equity investments) as of July 2, 2021; and (c) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis.

31. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose each of the price targets observed and the source thereof.

32. With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the individual premiums for each of the selected transactions analyzed by Evercore.

33. The absence of this information precludes Company from properly assessing the work performed by Evercore, and making an independent determination regarding valuation. This information is necessary to ensure stockholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to vote in favor of or against the Stock Issuance.

34. The omission of this information renders the statements in the "Opinion of Evercore -- Financial Advisor to NortonLifeLock" and "Certain VICI Unaudited Prospective Financial

7

Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

35. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other NortonLifeLock stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

36. Plaintiff repeats all previous allegations as if set forth in full.

37. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

38. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Evercore. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

39. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

40. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

41. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42. Plaintiff repeats all previous allegations as if set forth in full.

43. The Individual Defendants acted as controlling persons of NortonLifeLock within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NortonLifeLock, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, NortonLifeLock' stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NortonLifeLock, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to NortonLifeLock stockholders;

   B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

   D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  October 19, 2021       **LONG LAW, LLC**

              By */s/ Brian D. Long*
                 Brian D. Long (#4347)
                 3828 Kennett Pike, Suite 208
                 Wilmington, DE 19807
                 Telephone: (302) 729-9100
                 Email: BDLong@longlawde.com

                 *Attorneys for Plaintiff*